UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALLEN BRANDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-CV-505 |
| | ) |
| WAL-MART STORES EAST, LP D/B/A | ) |
| WAL-MART DISTRIBUTION CENTER | ) |
| #7390, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the Motion to Remand to Grant County Circuit Court filed by the Plaintiff, Allen Brandon (ECF 11). Defendant Wal-Mart Stores East, LP filed a response in opposition (ECF 13) to which Brandon filed a reply (ECF 14). For the reasons explained below, the motion is DENIED.

## BACKGROUND

Plaintiff Allen Brandon filed this lawsuit against Wal-Mart, his former employer, in state court, alleging that Wal-Mart "wrongfully terminated [Plaintiff's] employment" and that "said termination was a retaliatory action against the Plaintiff due to his Worker's Compensation claim and injury." Complaint (ECF 5), p. 2. Brandon alleges that "on September 20, 2019, he injured his right shoulder while working within the course and scope of his employment with Defendant[]" and that he was terminated from his employment two weeks later. *Id.*, pp. 1-2. Brandon's sole claim for retaliatory discharge is brought under Indiana state law pursuant to *Frampton v. Central Indiana Gas Company, Inc.*, 297 N.E.2d 425, 428 (Ind. 1973).

Wal-Mart filed a Notice of Removal and removed the case to this Court on the basis of diversity jurisdiction. Notice of Removal (ECF 1). Diversity jurisdiction requires diversity of citizenship of the parties to the action and an amount in controversy exceeding $75,000.00. 28 U.S.C. § 1332. Brandon contends in his motion to remand that the amount in controversy is not met in this case[1] and, as a result, it must be remanded to state court. Motion to Remand, p. 1 ("Subject matter jurisdiction based on diversity of citizenship does not exist because the amount in controversy is less than $75,000.00. The amount in controversy being less than $75,000.00 destroys the court's jurisdiction under 28 U.S.C. § 1332."). *Id*. Also in his motion, Brandon "stipulates that he will seek damages less than $75,000.00 and will not collect the amount of any judgment over $74,999.99." *Id*. Brandon argues, then, that the amount in controversy in this case is less than $75,000.00 and, even if he should recover more, he will not collect it. For this reason, Brandon asks this Court to remand this case to the Grant County Superior Court.

## STANDARD OF REVIEW

This Court set forth the standard of review on this issue in the case of *L.D., ex rel., Deter v. Meijer, Inc.*:

> A defendant in state court may remove a case to a federal district court only if the district court has original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). If the district court does not have jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c). When ruling on a motion to remand, "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum," with any doubt regarding jurisdiction resolved in favor of

---

[1] Diversity of citizenship is conceded in this case. Brandon is "a resident of the State of Indiana and the County of Grant." Complaint, p. 1. "Wal-Mart Stores East, LP operates the distribution center in Gas City, Indiana where Plaintiff was employed. Wal-Mart Stores East, LP is a limited partnership organized and existing under the laws of the State of Delaware with principal business offices located in Bentonville, Arkansas[,]" Notice of Removal (ECF 1), p. 1.

remand. *Battle v. Countrywide Home Loans, Inc.*, 2005 WL 2284250, at *1 (N.D.Ill. Sept.15, 2005) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). The burden of establishing federal jurisdiction falls on the party seeking removal. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2007); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Doe*, 985 F.2d at 911.

In this case, subject-matter jurisdiction could only be based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). There is no question that the parties are diverse; the only question for the Court is whether the amount in controversy exceeds $75,000. "The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Oshana*, 472 F.3d at 511 (citations omitted). The proponent of jurisdiction "has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Id.*; *see Bailey v. Conocophillips Co.*, 2006 WL 3487655, at *3 (S.D. Ill. Dec.4, 2006) ("A defendant seeking to establish jurisdiction on the basis of diversity must provide 'competent proof' that the amount in controversy exclusive of interest and costs exceeds $75,000.").

When the complaint does not establish the amount in controversy, "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511. The Seventh Circuit Court of Appeals has suggested several ways in which this may be done: by contention interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits from the defendant's experts, about how much it would cost to satisfy the plaintiff's demands. *Meridian Security*, 441 F.3d at 541; *Malinowski v. Walgreen Co.*, 2008 WL 2704740, at *2 (N.D. Ind. July 3, 2008). "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 511 (citation omitted and internal quotations marks omitted).

*L.D., ex rel., Deter v. Meijer, Inc.*, 2009 WL 1191694, at *1-2 (N.D. Ind. Apr. 30, 2009).

## DISCUSSION

In its response brief in opposition to Brandon's motion, Wal-Mart argues that removal was proper and that Plaintiff's assertion that the amount in controversy is less than the

jurisdictional amount–or more precisely, Plaintiff's representation that he will not seek or accept a judgment exceeding $74,999.99–"does not defeat Wal-Mart's removal[]" and is not a valid basis for seeking remand. Defendant's Response (ECF 13), p. 1. In support of its position, Wal-Mart cites and discusses the cases of *Chase v. Shop 'N Save Warehouse Foods*, 110 F.3d 424 (7th Cir. 1997) and *Hunt v. DaVita, Inc.*, 680 F.3d 775 (7th Cir. 2012), both of which hold that a post-removal stipulation by a plaintiff that he will seek less than the jurisdictional amount is ineffective to destroy diversity jurisdiction. *Chase*, 110 F.3d at 429 (a "post-removal stipulation [is] a prohibited way to 'manipulate the process to void the removal.'") (quoting *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 368 (1938)); *Hunt*, 680 F.3d at 777-78 ("post-removal disclaimer of damages exceeding $75,000 could not defeat federal jurisdiction after a proper removal based on the complaint[.]").

In *Chase*, the plaintiff filed a personal injury case in Illinois state court and the defendant removed it to federal court. Chase moved for remand but the district court denied the motion, holding that the defendant established "'to a reasonable probability" that the jurisdictional minimum was met and that plaintiff's post-removal stipulation "that she would not seek damages in excess of [the jurisdictional minimum]" was ineffective to defeat removal "because the stipulation came one month post-removal, too late for the court to consider. Our circuit follows the Supreme Court's holding in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, . . . that the district court is not deprived of jurisdiction where, as here, 'the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount.'" *Chase*, 110 F.3d at 429 (quoting *St. Paul*, 303 U.S. at 288). *See also*, *Perez v. Luxury Retreats Processing Inc.*, 2019 WL 7373022, at *3 (D.N.J. Dec. 5, 2019), report and

recommendation adopted, 2019 WL 7372935 (D.N.J. Dec. 31, 2019) ("With respect to Plaintiff's declaration that she has renounced any damages in excess of $74,500.00, it is well-recognized that a post-removal stipulation reducing the amount in controversy below the statutory threshold 'does not deprive the district court of jurisdiction.'") (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 292); *see also, Williams v. Old Dominion Freight Line, Inc.*, 2005 WL 8170729 (N.D. Ind. May 31, 2005) ("Ultimately, once a defendant has properly removed a plaintiff's case to federal court, any later filings by that plaintiff in attempt to limit his recovery to less than the jurisdictional amount–such as plaintiff's affidavit in the instant action–are irrelevant.") (citing *Chase*, 110 F.3d at 430); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (post-removal affidavit or stipulation limiting the plaintiff's claim does not authorize remand). The established law makes clear that Brandon's post-removal disclaimer is an improper basis for remanding this case.

Wal-Mart not only challenges Brandon's ineffective disclaimer, but also argues that removal was proper based on the allegations in his Complaint. Wal-Mart Stores contends as follows:

> [T]he relief requested in Brandon's Complaint demonstrates the amount in controversy well-exceeds the $75,000 minimum in 28 U.S.C. § 1332. Because Brandon's Complaint "provides little information about the value of [his] claims, . . . a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Brandon's Complaint vaguely seeks to recover "compensatory damages and punitive damages, together with attorney fees, and [damages] for all just and proper relief." [Complaint], p. 2. Wal-Mart, therefore, must only show it is plausible, by preponderance of the evidence, that these damages could exceed $75,000.

Defendant's Response, p. 2. Wal-Mart contends that a preponderance of the evidence shows that

5

the amount in controversy is met in this case based on the fact that Brandon seeks lost wages and punitive damages by way of his Complaint. Wal-Mart states that:

> In its Notice of Removal, Walmart showed that Brandon's lost wages in dispute are in excess of $120,000. . . . At the time of his termination, Plaintiff earned $19.85 per hour and worked an average of 35.97 hours per week, which equates to $3,094.02 per month.[2] . . . Because Brandon's employment terminated on approximately October 3, 2019, he accrued more than $6,000 in potential back pay as of the date of removal. The back-pay amount will only increase during this case's pendency. According to www.uscourts.gov, the most recent median for a civil case in the Northern District of Indiana from the time of the filing to trial is approximately 38.8 months. . . . Thus, measuring from the date of Brandon's termination, he could recover more than 40 months of back pay through trial–which exceeds $123,760–without even factoring in lost benefits. *See, e.g., Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006) (taking into account plaintiff's "lost wages (past and future)" in determining amount in controversy).

*Id.*, pp. 2-3. Finally, Wal-Mart notes that "Brandon expressly seeks punitive damages. Punitive damages are available in worker's compensation wrongful termination cases. . . . Punitive damages should therefore be considered in the amount in controversy analysis." *Id.*, p. 3. *See also, W.C. Motor Co. v. Talley*, 63 F.Supp.3d 843, 849 (N.D. Ill. 2014) ("Punitive damages count towards the amount in controversy.") (citing *Hunt*, 680 F.3d at 777-78).

In his reply brief, Brandon contends that *Chase* is distinguishable, arguing as follows:

> Wal-Mart relies on *Chase* for the proposition that Plaintiff cannot defeat diversity jurisdiction by stipulating that the amount in controversy is less than $75,000. But *Chase* differs significantly in that the amount in controversy was greater than the jurisdictional amount at the time of removal. Two key things occurred in *Chase* that have not occurred here:
>
> 1. A settlement demand in excess of the statutory minimum was made before

---

[2] In support of this calculation, Wal-Mart submitted the affidavit of Jennifer Chipchosky, a Wal-Mart Human Resources Representative, which sets forth Brandon's wages and hours while he was employed by Defendant. Defendant's Response, Exhibit 1, Declaration of Jennifer Chipchosky (ECF 13-1).

>removal.
>
>2. The plaintiff refused to admit that the amount in controversy was less than the statutory minimum.
>
>. . . Here by contrast the original settlement demand is for less than the statutory minimum and Defendant made no effort to determine through discovery or informal request whether the amount in controversy was met.

Plaintiff's Reply (ECF 14), pp. 1-2. Brandon insists that "[t]he amount in controversy in this case is not now and never has been $75,000 or greater." *Id*., p. 4.

Brandon's attempt to distinguish *Chase* doesn't change the well-established principle that a plaintiff's post-removal stipulation that he will seek damages totaling *less than* the jurisdictional minimum is an ineffective and improper way to attempt to defeat diversity jurisdiction. But it is equally well-established that the burden is on the removing party to show "by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold." *Oshana*, 472 F.3d at 510. So while it is true that Brandon's post-removal assertion that he will seek damages of less than $75,000 does not destroy diversity jurisdiction, the threshold, determinative issue is whether Wal-Mart Stores meets its burden of showing by a preponderance of the evidence that the requirements for diversity jurisdiction existed at the time this case was removed. If Wal-Mart meets this burden, the case remains in this Court and Brandon's post-removal promise that he will not seek or accept more than $74,999.99 in damages is irrelevant.

Brandon does not state in his Complaint a specific sum or amount of damages he is seeking,[3] but does include the following allegations and claim for relief:

---

[3] Brandon's Complaint does not include an allegation concerning the amount he seeks to recover in this case because Indiana state court pleading rules forbid him from doing so. Indiana

> . . . Defendant willfully, intentionally and maliciously terminated Plaintiff's employment, which caused Plaintiff to suffer damages including, but not limited to emotional distress, humiliation, lost wages and other personal damages. . . . Plaintiff prays for both compensatory damages and punitive damages, together with attorney fees, and for all other just and proper relief due to the retaliatory actions of the Defendant.

Complaint, p. 2. In his reply brief, Brandon argues that removal of this case was improper because he never alleged or represented that he was seeking $75,000 in damages. He contends that Wal-Mart's calculation of damages is flawed because: 1) it "did not account for the plaintiff's earnings after his termination which would offset the amount of damages[;]" and 2) the fact that Brandon is seeking punitive damages is insufficient to establish that he is seeking more than the jurisdictional minimum. Plaintiff's Reply, pp. 2-3. In support of his position, Brandon cites to, and quotes extensively from, the case of *Bush v. Roadway Express, Inc.*, 152 F.Supp.2d 1123 (S.D. Ind. 2001). Brandon points out that the court in *Bush* recognized that it is "'well settled that a plaintiff in an employment case has a legal duty to mitigate damages by making a diligent effort to find reasonably comparable employment[,]'" that subsequent earnings "'must be deducted from any back pay award[,]'" and that "'[t]hese legal premises have led several courts to conclude that amounts a plaintiff has actually earned by way of mitigation must

---

Trial Rule 8 states in relevant part as follows:

> (A) Claims for Relief. To state a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, a pleading must contain:
> . . .
> (2) a demand for relief to which the pleader deems entitled. Relief in the alternative or of several different types may be demanded. However, in any complaint seeking damages for personal injury or death, *or seeking punitive damages, no dollar amount or figure shall be included in the demand*.

Ind. Trial Rule 8(A)(2) (italics added).

be deducted from the amount in controversy and thus to remand cases for lack of subject matter jurisdiction. *Terry v. Service Corp. of America*, 990 F.Supp. 476, 477 (N.D. Miss. 1997); *Birkenbuel v. M.C.C. Construction Corp.*, 962 F.Supp. 1305, 1306 (D. Mont. 1997).'" Plaintiff's Reply, p. 2 (quoting *Bush*, 152 F.Supp.2d at 1126-27). Since Brandon got another job and has mitigated his damages (so far as lost wages are concerned), he argues that this reduces the amount he is entitled to recover and, consequently, the calculation of the amount in controversy. As to his claim for punitive damages, Brandon insists that *Bush* supports his argument that a claim for punitive damages does not automatically mean that a plaintiff's claims meet or exceed the jurisdictional minimum.

Brandon argues that *Bush v. Roadway* is more on point and supports his position that removal was improper in this case, notwithstanding his ineffective post-removal disclaimer. In *Bush*, the district court remanded the plaintiff's *Frampton* case to state court, concluding that defendant Roadway failed to carry its burden of proving by a preponderance of the evidence that Bush's claim for damages would exceed the jurisdictional minimum. The district court based its conclusion on two facts: first, it found that Ms. Bush had mitigated her lost wages damages (as she was required to do by law) and so the defendant's calculation of her back pay was too high; and second, that the defendant's contention that an award of punitive damages would serve to push the plaintiff's potential damages above the jurisdictional minimum was unconvincing because it was speculative and conclusory. The district court explained that "it is well settled that a plaintiff in an employment case has a legal duty to mitigate damages by making a diligent effort to find reasonably comparable employment[]" and "that amounts a plaintiff has actually earned by way of mitigation must be deducted from the amount in controversy" when a court is

assessing whether the jurisdictional minimum is met at the time of removal. *Bush*, 152 F.Supp.2d at 1126-27. The court also found that Roadway's assertion that "'there is a reasonable probability that the jury would award punitive damages against Roadway[]'" was a "conclusory assertion [that] will not suffice" to establish that Ms. Bush's damages would exceed the jurisdictional minimum. *Id*. at 1127.

Brandon is correct that Wal-Mart's calculation of his lost wages ignores the fact that he earned income after his termination from Wal-Mart. In the end, though, this contention does not defeat Wal-Mart's evidence in support of jurisdiction. As set forth above, Wal-Mart calculated Brandon's damages for lost wages as follows:

> Plaintiff's termination occurred on or about October 3, 2019. At the time of his termination, Plaintiff earned $19.85 per hour and worked an average of 35.97 hours per week, which equates to $3,094.02 per month. Because Plaintiff's employment with Walmart ended on approximately October 3, 2019 (approximately 2 months prior to the filing of this Notice [of Removal], he has accrued more than $6,188.04 in potential back pay as of the date of removal alone.

Notice of Removal (ECF 1), p. 4. Wal-Mart then calculated that Brandon's damages for lost wages "would only increase during the pendency of the case[]" and concluded that if the case was pending in this Court for a period of "38.8 months" Brandon "could recover a total of 40 months of back pay through trial, or $123,760.80, without even factoring in lost benefits. *Id*., pp. 4-5. But Brandon retorts by explaining that he "returned to work following his wrongful discharge in approximately October 2019. He earns $14.00 dollars [sic] per hour and works approximately 38.33 hours per week for a weekly wage of approximately $536.62 at his new job." Plaintiff's Reply, p. 3; Exh. 1 (pay stub for pay period from January 12, 2020, to January 18, 2020) (ECF 14-1). Therefore, according to Brandon, his back pay damages should be reduced

by the amount he earned between the date he was terminated by Wal-Mart and the date this case was removed from state court. *See Lovett v. Affiliated Computer Sys.*, 2012 WL 3637586, at *2 (S.D. Ind. Aug. 20, 2012) ("Generally, any mitigation of damages would decrease the amount in controversy.").

Brandon made $19.85 per hour and worked an average of 35.97 hours per week while employed at Wal-Mart. He makes $14.00 per hour in his new job and works an average of 38.33 hours per week. Thus, he made $ 714.00 per week at Wal-Mart ($19.85 x 35.97 hours) and at his new job he makes $536.62 per week ($14.00 x 38.33 hours), meaning he makes $177.38 per week (or about $763.00 per month) less now than he did at Wal-Mart. Brandon does not state specifically *when* he began his new job. He states that he "returned to work following his wrongful discharge in approximately October 2019." Plaintiff's Reply, p. 3. It is unclear whether this statement means that Brandon began his new job "in approximately October 2019" or if he got a new job soon after his *termination* "in approximately October 2019." In other words, it is not clear if the term "in approximately October 2019" refers to the date he was terminated or the date he started a new job. The only pay stub he submitted (Exhibit 1) is for the weekly pay period of January 12, 2020, to January 18, 2020. *Id*. (ECF 14-1). One thing, though, is clear: Brandon began his new job–making about $6.00 less per hour than he was making at Wal-Mart–within a few months or a few weeks (and perhaps almost immediately, if he began his new job "in approximately October 2019"). Assuming for the sake of argument that Brandon started his new job almost immediately after being terminated from Wal-Mart, and further assuming the life of this case extends to 40 months through trial, Brandon could recover back pay in the amount of $763.00 times 40 months, or $30,520. Assuming also that Brandon recovers punitive damages of

11

twice his compensatory damages[4], that would add another $60,000 to his potential damages, pushing the total well over the $75,000 threshold. And this does not account for attorney's fees or any amounts Brandon could recover for "emotional distress, humiliation . . . and other personal damages[]" (Complaint, p. 2).

As this Court explained in the similar case of *Williams v. Old Dominion*:

> Plaintiff did not specify within his complaint the amount of damages he seeks to recover from defendant, however, he does generally request "damages for the earnings he would have earned had he not been wrongfully discharged" along with punitive damages, attorney's fees and costs.
>
> . . . In his motion for remand, plaintiff argues that the value of this case does not exceed $75,000.00, and therefore this court lacks diversity jurisdiction. . . . Jurisdiction is determined as of the instant of removal. *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam). At the instant of this case's removal to federal court, the parties were clearly citizens of different states, and this court finds that defendant had good reason to believe that the amount in controversy exceeded $75,000.00. Indeed, although Indiana's pleading rules do not require a damages amount to be specified within a complaint, a plaintiff who wishes to ensure that his case stays in state court must file, with his complaint, a binding stipulation or affidavit stating that his damages do not exceed $ 75,000.00. *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 430 (7th Cir. 1997) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints. . . . ."). The failure to make such a stipulation

---

[4] *Aaron v. SmithKline Beecham Corp.*, 2010 WL 1752546, at *2 (S.D. Ill. Apr. 28, 2010) ("punitive damages in a ratio of two or three times a plaintiff's actual damages properly can be reckoned into the amount in controversy[.]") (citing *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317-18 (7th Cir.1996) ("Punitive damage awards for two or three times actual damages have been sustained.")); *Anderson v. Bayer Corp.*, 2010 WL 148633, at *4 (S.D. Ill. Jan. 13, 2010) (same). While Brandon argues that his request for punitive damages does not push the amount in controversy in this case above the statutory minimum due to the speculative nature of punitive damage awards, it is well established that "punitive damages can satisfy the minimum amount in controversy if punitive damages are available under state law." *Knuffman v. Mcwane Inc.*, 2016 WL 829964, at *1 (C.D. Ill. Mar. 3, 2016) (citing *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008)). In this case, the parties do not dispute that punitive damages are available to plaintiffs alleging a *Frampton* retaliatory discharge claim. More importantly, Brandon specifically asks for punitive damages in his Complaint, which Wal-Mart rightly considered when determining the amount in controversy in this case.

> leads to an inference that the plaintiff thinks his claim is worth more. *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). As plaintiff did not file a stipulation in the instant action, there existed such an inference in this case. This inference is strongly reinforced by the particular types of relief plaintiff requests–earnings he would have received had he not be wrongfully terminated, punitive damages and attorney's fees.

*Williams*, 2005 WL 8170729 (N.D. Ind. May 31, 2005). The Court concludes that: 1) Brandon's post-removal promise that he will seek less than the jurisdictional minimum is an insufficient and improper basis for remand; 2) Wal-Mart has met its burden of showing that its Notice of Removal set forth "a good-faith estimate of the stakes [that is] plausible and supported by a preponderance of the evidence[,]" *Oshana*, 472 F.3d at 511; and 3) Brandon has failed to establish "to a legal certainty that the claim is really for less than the jurisdictional amount[,]" *Id*. Therefore, the motion to remand must be denied.

## CONCLUSION

For the reasons explained above, the Motion to Remand filed by Plaintiff Allen Brandon (ECF 11) is DENIED.

Date: March 24, 2020.

/s/ William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana